ANNETTE KINGSLAND ZIEGLER, J.

(concurring).

¶ 100. I respectfully concur in the mandate. I *103 agree with the result reached by the lead opinion in this case, as well as the lead opinion's basic rationale and much of the lead opinion's analysis. That is, I agree that the Town could not, consistent with the United States Constitution and the Wisconsin Constitution, compel the Milewskis to choose between exercising their constitutional right to challenge a governmental deprivation of their property and exercising their constitutional right to refuse governmental entry into their home. This Scylla and Charybdis, however, has seemingly been analyzed under the rubric of the "unconstitutional conditions doctrine" by the lead opinion. I am concerned with this characterization.
¶ 101. I concur only in the mandate principally because of the lead opinion's unprecedented decision to rely on the "unconstitutional conditions doctrine," a term absent from the briefing in this case. The perils of addressing unbriefed issues are illustrated by the lead opinion's discussion. A review of existing case law demonstrates that the unconstitutional conditions doctrine is more complex than the lead opinion's analysis suggests, and that it has most typically, if not always, according to the Supreme Court, arisen in cases which involve government benefits. See, e.g., Koontz v. St. Johns River Water Mgmt. Dist., 570 U.S._, 133 S. Ct. 2586, 2594 (2013) ("We have said in a variety of contexts that 'the government may not deny a benefit to a person because he exercises a constitutional right.'. . . Those cases reflect an overarching principle, known as the unconstitutional conditions doctrine, that vindicates the Constitution's enumerated rights by preventing the government from coercing people into giving them up." (emphasis added)); id. at 2596 ("Virtually all of our unconstitutional conditions cases involve a gratuitous governmental benefit of some *104 kind."); Planned Parenthood of Ind., Inc. v. Comm'r of Ind. State Dep't Health, 699 F.3d 962, 986 (7th Cir. 2012) ("The first step in any unconstitutional-conditions claim is to identify the nature and scope of the constitutional right arguably imperiled by the denial of a public benefit." (emphasis added)); Madison Teachers, Inc. v. Walker, 2014 WI 99, ¶¶ 29-35, 358 Wis. 2d 1, 851 N.W.2d 337 (suggesting that the unconstitutional conditions doctrine embodies the principle that "it is impermissible for the government to condition the receipt of a tangible benefit on the relinquishment of a constitutionally protected right" (emphasis added)); Kathleen M. Sullivan, Unconstitutional Conditions, 102 Harv. L. Rev. 1413, 1415 (1989) ("The doctrine of unconstitutional conditions holds that government may not grant a benefit on the condition that the beneficiary surrender a constitutional right, even if the government may withhold that benefit altogether." (emphasis added)).[1]
¶ 102. Perhaps this doctrine should be applied in this case (which does not involve a governmental benefit), but I would prefer to see briefing and argument on that question before establishing a rule in Wisconsin. Experience teaches that broad legal statements untethered to the specific facts of the case, like those present in the lead opinion's section on the unconstitutional conditions doctrine, can easily metastasize in our legal system and become "virtual engine [s] of destruction for countless legislative judg *105 ments which have heretofore been thought wholly consistent with. . . the Constitution." Weinberger v. Salfi, 422 U.S. 749, 772 (1975) (discussing the irrebut-table presumption doctrine). Judicial restraint dictates that we decide this case narrowly, especially given the numerous constitutional considerations involved.[2]
¶ 103. Aside from this deficiency, other aspects of the lead opinion suffer from the same proclivity for overbroadness. For instance, the lead opinion is not content to reject the argument that home intrusions of the type involved under the specific facts at issue are minor; it instead concludes that no governmental entry into a home under any hypothetical set of circumstances can ever be minor. See lead op., f 57. The statement sounds impressive, but I do not understand the need for such sweeping remarks. While the lead opinion may be entirely correct, I am not willing to decide an infinite number of potential future cases without briefing and argument. To take another example, while the lead opinion could easily quote well-established Fourth Amendment maxims for some of the principles it cites in its opinion, it instead chooses to reword them in ways that could be easily misunderstood. See, e.g., lead op., ¶ 37 ("[C]onsent removes the search from Fourth Amendment scrutiny.").
¶ 104. In sum, while I would like to join the lead opinion, I cannot do so for fear of its potential effects on existing case law and the ways in which it could be cited in the future.
*106 ¶ 105. For the foregoing reasons, I respectfully concur in the mandate.
¶ 106. I am authorized to state that Justice MICHAEL J. GABLEMAN joins this opinion.

 I do not necessarily reject all of the principles provided in the lead opinion's discussion. I simply disagree with the lead opinion's use of the unconstitutional conditions doctrine to resolve this case.